BELL et al, *Appellants,*

*v.*

CITY OF CORVALLIS et al, *Respondents.*

(No. 29435, CA 5155)

551 P2d 125

*Charles J. Merten,* Portland, argued the cause for appellants. With him on the briefs were Merten & Saltveit, Portland.

*James Eickelberg,* Corvallis, argued the cause for respondent City of Corvallis. With him on the brief was Scott A. Fewel, Corvallis.

[ 822 ]

*Peter L. Barnhisel,* Corvallis, argued the cause for respondent Hewlett-Packard Corporation. With him on the brief were Fenner & Barnhisel and John B. Fenner, Corvallis.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

## LANGTRY, J.

The plaintiff, J. Richard Bell, appeals from an adverse decision in a declaratory judgment action in which he seeks to have a contract between the City of Corvallis and the Hewlett-Packard Corporation (H-P) declared invalid. H-P has purchased a tract of land outside and near but not contiguous with the boundaries of the city with the intention of erecting thereon a large manufacturing plant. H-P expects to hire and necessarily bring into the area several thousand workers with the result that the population of the City of Corvallis and surrounding area will be substantially increased.

The proposed plant, aside from the increased population, will require extensive sewer, sewage treatment and water services and it is for the fulfillment of these needs that the contract was made. In the contract H-P and the city agree that H-P desires to annex the property to the city so that municipal services including water and sewer will be available thereto. The city agrees that it is willing to consider annexation but requires that any actual annexation be delayed until the improvement is completed so that upon annexation the land will reflect its improved true cash value for tax base purposes.

Among the mutual promises made by the respective parties is that the city will make available to H-P water and sewer services subject to city regulations and H-P will pay therefor all usual and applicable fees. H-P agrees that it will conform with the long-range water and sewer plans of the city and that within 60 days after substantial completion of the plant it will deliver to the city its consent to the annexation of the area to the city. The parties mutually agree that the city "cannot bind itself by an enforceable contract to pass future legislation annexing the building site * * *" but the city agrees it will process and consider in a manner usual in such a request the application and consent of H-P for the annexation.

The plaintiff in this action purports to act on behalf of himself, a resident and taxpayer in the city, and all others similarly situated. The trial court held that he had not properly brought himself within the applicable class action statute (ORS 13.220). No challenge to this holding has been made in the appeal. Consequently, in our consideration of the case the action stands as an action by the plaintiff on his own behalf. We cannot see that this has any material bearing on the outcome of the case, in any event.

After a number of preliminary complaints, motions and demurrers the plaintiff filed a third amended complaint upon which the action was tried. (A fourth amended complaint was filed which simply deleted the matter eliminated by the last demurrer, but the denials to the third amended complaint stood as denials to the fourth, by agreement of counsel.) The third amended complaint recited background facts, including those we have related above, alleged that the plaintiff is prepared to seek a referendum election in the city on the question of whether the site should be annexed to the city and then asserts that the action of the city is illegal in that (1) the purpose of the contract is to "delay the right" of the plaintiff and others to use the referral process in relation to the annexation; (2) the effect of the same is "to delay and make ineffectual the right of the plaintiff * * * to meaningfully engage in and use the referral process" to vote on the question of annexation; (3) the contract and its execution by the city violates ORS 224.020 and 454.175 "because such service is not necessary for the protection of the public health * * * is not in the public interest, and is not necessary or desirable for the proper disposal of sewage * * * within the corporate limits of the city or adjacent thereto"; (4) the action violates ORS 225.020 and 225.030 in that it "will not be to the use, benefit or profit of the city"; and (5) the city did not provide adequate opportunity to citizens to participate in the decision, did not place a burden of proof on H-P to show a public need for the contract,

and did not provide an impartial decision-making body at the hearings in that the officials had ex parte contacts with H-P representatives, etc. (Another allegation in this regard alleged one member of the city council was a stockholder of H-P and improperly partook in the negotiations. This allegation was abandoned on trial.) A copy of the contract was annexed to and made a part of the complaint.

With reference to contentions (1) and (2) above the trial court sustained demurrers. The ground assigned was that the council action in executing the contract was an administrative, not a legislative, matter and that the action therefore was not subject to referendum provisions of the Oregon Constitution. Thereafter, the court tried the other issues made by the complaint and defendants' answers, which were in the nature of general denials. In its memorandum decision the court held that the statutes upon which plaintiff primarily bases issues (3) and (4), above, gave the city the authority to make the contract and that the same is valid, that there was no conflict of interest on the part of the council members, or other reasons under (5) above to declare the contract invalid, and that the injunction request of the complaint was denied.

In this appeal, plaintiff contends it was error (1) to sustain the demurrers; (2) to hold the applicable statutes conferred authority upon the council to make the contract; (3) to exclude evidence about the effect of the contract on the life of the city's sewage treatment plant and evidence about the city's alleged present and prospective violation of its waste discharge permit from the state; and (4) to hold that the "doctrine" of "appearance of fairness" does not apply.

■■ (1) The demurrers were properly sustained. The contract does not purport to, nor does it, effect an annexation. It specifically states that both parties recognize that the city cannot bind itself to a future annexation. Plaintiff argues that if the city proceeds with the contract, it will so involve the city in the

enterprise that citizens will be faced, when any election does occur, with a situation that will dictate an affirmative vote on the question. This may or may not be so—that is conjecture—but the fact remains that the statutes, discussed infra, with the city charter, authorize the council to take the action it did. Plaintiff did not plead that he or anyone else made an effort to refer that action (the making of the contract) to the electors. Hence, the question of whether the action was legislative and subject to referendum, or administrative and not' subject thereto, simply is not presented.[1]

■■ If a complaint for a declaratory judgment presents a justiciable controversy, the matter cannot be decided on a demurrer. *Cabell v. Cottage Grove,* 170 Or 256, 262, 130 P2d 1013, 144 ALR 286 (1942). But if no justiciable controversy, that is, no cause of action, is presented by the complaint, demurrer is a proper method of attack by the defendant. *Hale v. Fireman's Fund Ins. Co.,* 209 Or 99, 302 P2d 1010 (1956). *Hale* holds that to be justiciable the controversy "must be 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " A court will not make a declaration "in a suit wherein the rights of the plaintiff are contingent upon the happening of some event which cannot be forecast and which may never take place * * *." 209 Or at 103-04.

(2) The applicable statutes and the city charter authorized the city council to make the contract.

(a) The trial court found that ORS 224.020 and 454.215 authorize the city to contract to extend its sewer facilities outside its boundaries.

---

[1]The trial court in a short memo at the time of its ruling on the demurrers, as we have indicated above in text, rested its decision in part on the proposition that the action was administrative and not subject to referendum. We think it was unnecessary to consider that question, and express no opinion thereon. *Compare Kelly v. Silver,* 25 Or App 441, 450-51, 549 P2d 1134 (1976); *Amalgamated Transit Union v. Yerkovich,* 24 Or App 221, 545 P2d 1401, Sup Ct *review denied* (1976); *Allison v. Washington County,* 24 Or App 571, 548 P2d 188 (1976).

ORS 224.020 provides that a city council may

"* * * provide for and do all things * * * which may be deemed necessary or essential for the proper disposal of sewerage and drainage from the city and adjacent territory."

Black's Law Dictionary 62 (1951) defines "adjacent":

"Lying near or close to; sometimes, contiguous; neighboring * * *. *Adjacent* implies that the two objects are not widely separated, though they may not actually touch * * *."

ORS 454.215 provides:

"(1) Any municipality may own, acquire, construct, equip, operate and maintain, either within or without its statutory or corporate limits, in whole or in part, disposal systems with all appurtenances necessary, useful or convenient for the collection, treatment and disposal of sewage * * *.

"(2) The authority given * * * shall be in addition to, and not in derogation of any power existing in the municipality under any constitutional, statutory or charter provisions * * *."

The city charter, which is a part of the record, provides in seven of its sections and amendments for sewage collection and treatment facilities within and without the city, and for varied usual methods for the financing thereof.

There is no need to interpret this wealth of authorization for what the city has undertaken in the challenged contract. The council acted well within its authority.

(b) The trial court found that under ORS 225.020, 225.030 and Corvallis, Or, City Charter, ch 2, § 4, the city had authority to contract to sell and supply water outside its boundaries.

ORS 225.020 provides:

"(1) When the power to do so is conferred by * * * its charter * * * any city may build, own, operate and maintain waterworks, water systems * * * within and with-

out its boundaries for the benefit and use of its inhabitants and for profit. To that end it may:

"(a) Acquire water systems and use, sell and dispose of its water for domestic, recreational, industrial, and public use and * * * other purposes within and without * * *.

"* * * * *"

ORS 225.030 provides:

"Any city owning * * * waterworks * * * may make contracts in reference to the sale and disposal of water * * * from such system, for use within or without * * *."

Section 4, ch 2 of the city charter is a general grant of powers including all of those powers

"* * * which a city can exercise upon specifically accepting them * * * as fully as though this charter expressly stated each of those rights, powers, privileges, and immunities, and as though each of them had been specifically accepted by the city or granted to it by the people of the city * * *."

This general grant of powers does all it purports to do. *Davidson Baking Co. v. Jenkins,* 216 Or 51, 337 P2d 352 (1959); *City of Salem v. O.-W. Water Serv. Co.,* 144 Or 93, 117-18, 23 P2d 539 (1933); *Schmidt v. Masters,* 7 Or App 421, 490 P2d 1029 (1971), Sup Ct *review denied* (1972).

Plaintiff contends that the words of ORS 225.020 (1) "and for profit" require that any contract for sale of water outside the city must be for profit, and that the challenged contract does not so provide, hence, it is unauthorized.

ORS 225.020 was enacted by Oregon Laws 1913, ch 283, p 541. ORS 225.030 was enacted by Oregon Laws 1911, ch 80, p 121. The statutes should be read and construed together. Taken together, they evince an intention to facilitate the furnishing of water by cities to outside areas, not to impede it. Viewed in this light the words "and for profit" should be taken as a broadening of the authority, not a restriction upon it. We do not know from the record whether the city may

be expected to profit from the contract for the benefit of its present constituency, but if it does or does not, we are satisfied that the contract it has made is within the statutory and charter authority conferred upon it.

■ (3) The contention that the court should have allowed and considered evidence on the immediate or prospective effect of additional sewage on the life of the city's existing waste disposal system, and evidence of alleged present and prospective overage violations of the city's state waste discharge permit relate to what plaintiff referred to in his pleadings only generally as action "not in the public interest." Assuming that these matters were adequately pled (and we do not hold they were), they lack substance in the context of this case. In *Yamhill Elec. Co. v. City of McMinnville,* 130 Or 309, 274 P 118, 280 P 504 (1929), *appeal dismissed* 280 US 531 (1930), where some of the same statutes we have considered above were construed, the Supreme Court said:

"* * * [T]o a certain extent, we agree with counsel in the view that participation by municipalities in enterprises such as furnishing water or electric lighting outside its municipal limits is not * * * sound economics or public policy * * *.

"* * * * * *

"Whether the legislation * * * is on the whole unwise, is a matter of private judgment * * *.

"* * * * * *

"* * * The city was within its technical legal rights * * *." 130 Or at 338-40.

Here, the city council was acting within its statutory and charter authority. Within the bounds of that authority, the decision is for the council, not the court. The proffered testimony was irrelevant to the issues before the court.

■ (4) The plaintiff seeks to have this court apply an "appearance of fairness" doctrine applied by the Washington Supreme Court in zoning proceedings to the council's actions in the matter at bar. In the first amended complaint there were allegations made about

the mayor's involvement in matters in aid of the H-P development after the contract was made, for the apparent purpose of laying the basis for the claim of "apparent unfairness." These allegations were the subject of a demurrer which was sustained. The matters were realleged in the second amended complaint and defendants moved to strike them, which motion the court allowed.[2]

The basis the court expressed for its ruling on the demurrer was that if the doctrine were to apply, the facts alleged must have related to something that occurred *during* the making of a quasi-judicial decision by the council. This is on the theory that quasi-judicial decisions in zoning matters should comply with basic fairness. *See Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973); and *Smith v. Skagit County,* 75 Wash 2d 715, 453 P2d 832 (1969). The plaintiff seeks to have this theory expanded to include all actions by a local government governing council or commission.

The matters that are relied upon in brief on this appeal and held by the demurrer to have been insufficient to state a cause under the theory plaintiff was urging on the court related to actions of the mayor and others *after* the decision was made to approve the contract with H-P. It should be noted that this matter is only part of the allegations that were made, but it is all that plaintiff now relies upon. We agree with the trial court that the plaintiff did not allege facts to bring this cause within the theory. What we have said in this regard should not be construed as holding one way or the other that the theory propounded by plaintiff is applicable. We simply hold the trial court did not err in the context of the case presented.

Affirmed.

---

[2]In brief, one of the defendants has asserted that the court refused to strike this matter in the second amended complaint, but as we read the abstract and record, the motion was allowed.