VILLA SIERRA CONDOMINIUM ASSOCIATION, a Colorado non-profit corporation, and Warren M. Cramer, as representative of the class, Plaintiffs–Appellees,

v.

FIELD CORPORATION, a Colorado corporation, and Villa Sierra Development, a Joint Venture, Defendants–Appellants,

and

City of Colorado Springs,
Defendant–Appellee.

No. 93CA0151.

Colorado Court of Appeals,
Div. II.

June 30, 1994.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1993 Cum.Supp.).

The Wills Law Firm, Lee R. Wills, David Pitinga, Colorado Springs, for plaintiffs-appellees.

Gorsuch Kirgis, L.L.C., Mark C. Hansen, Denver, for defendants-appellants.

James C. Colvin, II, City Atty., Thomas J. Marrese, Sr. Litigation Atty., Office of the City Atty., Colorado Springs, for defendant-appellee.

Opinion by Judge CRISWELL.

Defendant, Villa Sierra Development, was a joint venture that was formed to develop the Villa Sierra condominium project in Colorado Springs; Field Corporation (Field), as the sole, surviving joint venturer, is its successor. They appeal from a declaratory judgment entered in favor of plaintiffs, Villa Sierra Condominium Association (the association), a non-profit homeowners' corporation, and Warren Cramer, who represent a class of all present condominium unit owners within the project. That judgment determined that a written agreement between the joint venture and the City of Colorado Springs required Field to pay the costs for the installation of curbs, gutters, sidewalks, drainage facilities, and paving in a street abutting the condominium project whenever the City requested this construction. We affirm.

The parties' evidence was presented in a bench trial. While Field contests the validity of the legal conclusions drawn by the trial court, it does not dispute its factual findings. Those findings reflect that the Villa Sierra project was developed over the course of approximately 20 years, and such development consisted of the construction of condominium units and certain common elements and the sale of the units to various buyers.

The project bordered a non-developed public street, and the City requires, in such circumstances, that the developer install certain street improvements, including sidewalks, curbs, gutters, drainage facilities, and paving. City ordinances also provide for the creation of special improvement districts to install such improvements and for the assessment of the costs of construction against properties specially benefitting from those improvements.

Prior to the development of the project, the joint venture obtained a long-term ground lease from the fee owner of the property, pursuant to which it agreed "to bear, pay and discharge" all special assessments which might be levied against the fee owner with respect to the leased premises. Thereafter, the City's planning commission approved the development plans for the project, but made such approval subject to the condition that the joint venture provide adequate assurance that the necessary improvements to the subject street would be made in the future.

To fulfill this condition, the joint venture entered into a "Time Delay Agreement" with the City, which allowed it to delay the construction of such improvements. In return, it promised to pay the cost of the construction of such improvements whenever the City determined that they were necessary, which promise was initially secured by a letter of credit delivered to the City. The agreement was declared to be binding upon the signatory parties, "their heirs, successors, assigns, and/or personal representatives."

Prior to the sale of the units, the joint venture executed and filed a condominium declaration covering the project, and the association was created to administer its provisions and to hold and manage the various common elements. A general description of this declaration is contained in *Villa Sierra Condominium Ass'n v. Field Corp.*, 787 P.2d 661 (Colo.App.1990). This declaration assigns to the individual unit owners the financial responsibility for any "separate assessments and taxation."

As of the date of trial, the joint venture had installed a portion of the improvements contemplated by the agreement, and the City

had released the letter of credit. Because no final decision had been made with respect to the nature of the improvements to be constructed in the street at issue, the City had not yet called for their construction. In 1991, however, Field denied any further financial responsibility with respect to these improvements. And, the trial court found that such denial adversely impacted the marketability of the existing condominium units.

The City, which was joined as a defendant by plaintiffs in this litigation, asserts that Field continues to be liable to it for the payment of the cost of the relevant street improvements at such time as it determines that their construction is necessary. However, while the validity or meaning of its ordinances respecting special assessments is not in issue, the City also asserts that it may look to the owners of the land specially benefitted for payment of such cost, if necessary.

Based upon the foregoing facts, the trial court concluded that: (1) the dispute whether Field was liable under the Time Delay Agreement was ripe for determination under the statute and rule governing declaratory judgments; (2) the association and the plaintiff class members were "successors" to the joint venture as purchasers of condominium units; (3) the association and the unit owners were intended third-party beneficiaries of such agreement, so that the terms of such agreement can be enforced either by the City or by any of them; and (4) because the parties did not intend for the joint venture's responsibility to end upon the sale of the units, Field, as the sole continuing joint venturer, remains "primarily" liable for the payment required by the agreement, even though the association and the unit owners may also be liable for the cost of such construction.

## I.

Defendants first argue that the controversy between the parties here was one of a nature that would not permit the court to enter a declaratory judgment with respect to that dispute. We disagree.

Colorado has adopted the Uniform Declaratory Judgments Law, § 13–51–101, et seq.,

C.R.S. (1987 Repl.Vol. 6A), the provisions of which the supreme court has incorporated, substantially verbatim, into C.R.C.P. 57. That statute and rule are intended to provide a method to relieve parties from uncertainty and insecurity with respect to their "rights, status, and other legal relations," and such provisions are, therefore, to be "liberally construed and administered." Section 13–51–102, C.R.S. (1987 Repl.Vol. 6A); C.R.C.P. 57(k).

Under these provisions, any person interested in the subject matter may obtain the determination of "any question of construction or validity" arising under any contract, or a declaration of "rights, status, or other legal relations thereunder." Section 13–51–106, C.R.S. (1987 Repl.Vol. 6A); C.R.C.P. 57(b). In this context, "[a] contract may be construed either before or after there has been a breach thereof." Section 13–51–107, C.R.S. (1987 Repl.Vol. 6A); C.R.C.P. 57(c).

However, there must be a presently existing controversy; the fact that there may arise some controversy in the future is not sufficient to allow a party to invoke the court's declaratory jurisdiction. *Gabriel v. Board of Regents,* 83 Colo. 582, 267 P. 407 (1928). The ultimate test to determine whether plaintiff may seek a declaratory judgment, therefore, is whether that plaintiff can "demonstrate that there is an existing legal controversy that can be effectively resolved by a declaratory judgment, and not a mere possibility of a future legal dispute over some issue." *Board of County Commissioners v. Bowen/Edwards Associates, Inc.,* 830 P.2d 1045, 1053 (Colo.1992).

The determination of this question rests within the trial court's sound discretion. An appellate court, therefore, will overturn such decision only in the instance of an abuse of such discretion. *Troelstrup v. District Court,* 712 P.2d 1010 (Colo.1986).

In considering whether a present dispute exists, a division of this court has stated in dictum that it is necessary that there be a state of facts indicative of "threatened litigation in the immediate future." *American Family Mutual Insurance Co. v. Bowser,* 779 P.2d 1376, 1380 (Colo.App.1989).

■ It is not, however, the imminence of litigation, from a temporal aspect, that is important. Rather, the essential requirement is that all relevant events have occurred, so that the court is addressing a present dispute. Hence, if the parties' legal rights are dependent upon the happening of a contingency that may never occur, the issuance of a declaratory judgment would be premature. *See Empire Life Insurance Co. v. Moody*, 584 S.W.2d 855, 858 (Tex.1979) (a declaratory judgment action is proper if "the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy, although such questions may in the future require adjudication"); *Bell v. City of Corvallis*, 25 Or.App. 821, 551 P.2d 125 (1976) (a question has sufficient "immediacy" if all material factual events have occurred).

■ It is not necessary, therefore, that there be a threat of litigation. It is sufficient if future litigation is implicit in the defendant's expressed attitude. *See Simmonds Aerocessaries, Ltd. v. Elastic Stop Nut Corp.*, 257 F.2d 485 (3rd Cir.1958) (cited with approval in *American Family Mutual Life Insurance Co. v. Bowser, supra.*)

Here, while there had been no actual breach of the Time Delay Agreement, because the City had not yet called upon Field for its performance, the trial court found that Field's express denial of any liability under that agreement constituted an anticipatory repudiation of the agreement. Such repudiation certainly implies future litigation. Indeed, it was that repudiation which led to the institution of this action, and that repudiation cannot now be retracted. *See Johnson v. Benson*, 725 P.2d 21 (Colo.App.1986).

Further, while Field's ultimate monetary liability will depend upon when the City decides to call for the street's improvements and the nature of those improvements, the evidence before the trial court was that the City would eventually call for such improvements to be made. Because there had been no final decisions made by the City with respect to the design of the improvements or the manner of financing them, it was estimated that such improvements would not be made for several years. However, Field makes no claim that its liability under the agreement with the City is dependent upon the type of the improvements that the City ultimately decides are necessary. Hence, Field's liability under the agreement will not be affected by the City's ultimate decision upon this subject, as the trial court recognized.

In addition, the dispute with respect to Field's liability under the Time Delay Agreement was only one of several which arose out of the relationship between Field, the association, and the unit owners, and which were the subject of the instant litigation. *See Villa Sierra Condominium Ass'n v. Field Corp., supra.* Refusal by the trial court to resolve this dispute would have meant that the parties would have continued as disputants.

Finally, the association represented that, because the units occupied the land upon which they were erected only pursuant to a leasehold interest, the value of those units could be maintained only if fee title to the ground could be obtained. It also represented that, if Field was not liable for the street improvements, it would be necessary to reserve funds to pay for such improvements and to divert such funds from its efforts to acquire the fee title.

Moreover, in light of the nature of the association and the source of its funding, a decision with respect to the need for such reserve had to be made in the immediate future. *See Toncray v. Dolan*, 197 Colo. 382, 384, 593 P.2d 956, 957 (1979) ("[w]ithout the declaratory judgment procedure, [plaintiffs] have no way of knowing how to file correct tax returns for future years").

Given all of the foregoing circumstances, we conclude that the trial court did not abuse its discretion in accepting the association's request for declaratory relief.

## II.

■ We also reject Field's argument that the trial court erred in concluding that the association and the present condominium unit owners were third-party beneficiaries of the Time Delay Agreement.

A third party who is not a signatory to an agreement may, nevertheless, have the authority to enforce one or more of the obligations created by that agreement, if the third party is intended by the other parties to be a direct beneficiary of that agreement. And, such intent need not be expressed in the agreement itself; that intent may be evidenced either from the terms of the agreement, the surrounding circumstances, or both. *Jefferson County School District v. Shorey*, 826 P.2d 830 (Colo.1992).

Here, neither the association nor the prospective unit owners are referred to in the Time Delay Agreement. However, both the nature of that agreement and the surrounding circumstances demonstrate that it was intended to benefit those third parties.

We may take notice that public improvements installed within a public street, while they benefit the public generally, also bestow a special benefit upon the abutting properties. And, as a result, such improvements are often financed by the creation of special improvement districts and the levy of special assessments upon the properties so specially benefitted. *See* § 31–25–501 through § 31–25–541, C.R.S. (1986 Repl.Vol. 12B); *Bloom v. City of Fort Collins*, 784 P.2d 304 (Colo.1989); *Reams v. City of Grand Junction*, 676 P.2d 1189 (Colo.1984).

The joint venture's obligations under the Time Delay Agreement here, then, directly benefitted the association and each prospective condominium unit owner in at least two ways.

First, to the extent that the agreement contemplated the construction of improvements in the abutting street, such construction would increase the value of each unit and of the related common areas.

Second, the agreement contemplated that the bestowal of such benefits would *not* be paid for by the levy of special assessments for which the properties would stand as security for payment. Rather, it was contemplated that the developer, as the seller of the units, would pay the costs associated with such construction. Hence, the agreement called not only for the bestowal of a benefit in the form of street improvements upon the property, but it was intended to free such land from a future levy of a special assessment.

Under similar circumstances, several courts have determined that an agreement between a local government and another party was designed to bestow a direct benefit upon private property, thereby making the owners of that property direct third-party beneficiaries of the agreement. *See Vale Dean Canyon Homeowners Ass'n v. Dean*, 100 Or.App. 158, 785 P.2d 772 (1990) (agreement of developer to construct road improvements in subdivision); *Touchberry v. City of Florence*, 295 S.C. 47, 367 S.E.2d 149 (1988) (contract between city and county to provide water services to subdivision); *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 583 P.2d 997 (1978) (contract to construct improvements in local improvement district and to do so in manner least likely to disturb businesses during time of construction).

The opinion by a division of this court in *Schmidt–Tiago Construction Co. v. City of Colorado Springs*, 633 P.2d 533 (Colo.App. 1981) does not mandate a contrary conclusion. There, it was held that a contract requiring the developer to deposit a letter of credit with the city as security for the promise to construct street improvements, but which contained no promise to pay the developer's suppliers or subcontractors, disclosed no intent to benefit those parties. While the language contained in that opinion is somewhat broader than was needed to address the precise issue presented, the analysis there is not inconsistent with that which we have employed here.

We conclude, therefore, that the trial court correctly determined that the association and the present and future condominium unit owners were intended third-party beneficiaries of the Time Delay Agreement and that they could, therefore, judicially enforce its provisions.

### III.

We also reject Field's assertion that the trial court erred in determining that it was "primarily" liable under the agreement, while the association and the unit owners were only

"secondarily" liable thereunder, as well as its related argument that that decision improperly restricted the City's discretion as to the manner in which the improvements in question are to be financed. While we do not fully agree with the trial court's analysis of the liability of the association and the unit owners, we are in essential agreement with the result it reached.

### A.

 After first concluding that the association and the unit owners were direct third-party beneficiaries of the joint venture's promise to pay construction costs, the trial court also concluded that such promise constituted a covenant running with the land, so that the very same parties were obligated to perform that promise. However, it determined that the Time Delay Agreement was intended to make the joint venture primarily liable for such payment; consequently, it also concluded that, should Field fail to pay the pertinent construction costs, the association and the unit owners would be entitled to indemnity from it for any costs they were required to pay.

While we agree that, should Field fail to pay the construction costs, the association or the unit owners may enforce its promise to do so, we do not agree that the association and the unit owners are liable *under the agreement* for the payment of those costs.

The promise made by the joint venture was a personal promise to pay a sum of money. That promise was in no way secured by a lien or other security interest in the land. Rather, in accordance with the City's ordinances, that promise was originally secured by a letter of credit, which the City later allowed the joint venture to withdraw. Hence, on its face, while the money to be paid was to be used to *benefit* the land, the promise to pay did not purport to *burden* that land.

 Generally, a successor in title does not become obligated to pay a sum promised to be paid by his or her predecessor unless the successor assumes responsibility therefor. In the case of such an assumption, however, the resulting promise is a personal one; it is not a covenant running with the land. *See Rittmaster v. Brisbane,* 19 Colo. 371, 35 P. 736 (1894).

Further, there is nothing in this record that would demonstrate an intent on the part of either of the original parties to the agreement that the successors *in title* to the joint venture were to become personally liable for the payment of the construction costs.

The reference in the agreement to "assigns" and "successors" does not, in our view, refer to the joint venture's successors in title; it refers to the assigns or successors of the joint venture's development rights and business interests, such as Field. Indeed, the condominium declaration that was prepared by the joint venture not only makes no reference to the assumption by the association or the unit owners of a responsibility to pay under the agreement, but it merely referred to taxes and assessments, the payment of which would be secured by a lien upon the property. *See Bigelow v. Nottingham,* 833 P.2d 764 (Colo.App.1991), *rev'd on other grounds sub nom. Haberl v. Bigelow,* 855 P.2d 1368 (Colo.1993). And, in this connection, we note that the City in its argument before this court has acknowledged that it does not consider that the association or unit owners are liable under the agreement.

Finally, because the nature of the agreement and the circumstances surrounding its execution demonstrate an intent to make the association and the unit owners direct third-party *beneficiaries* of the joint venture's promise to pay, it would be anomalous to conclude that those circumstances also demonstrated an intent to render those parties *obligors* upon the same promise.

We conclude, therefore, that the joint venture's promise to pay the construction costs was not assumed by the association or by the later owners of the condominium units. Such obligation, therefore, cannot be enforced against those parties, either personally or against the condominium units.

This is not to say, of course, that the condominium units and the property owned by the association cannot be made liable for the construction costs of such improvements in the event of the levy of special assess-

ments upon those properties. Neither those parties nor properties are independently liable for such costs under the terms of the Time Delay Agreement, however.

### B.

■ The trial court's declaration of rights did not purport to require the City to do anything that it was otherwise not required to do or to refrain from doing something it chose to do. That declaration does not prevent the City from choosing either to enforce the Time Delay Agreement against Field, or to levy special assessments upon the properties, or to pursue both courses of action.

However, *if* Field does not honor its obligation under the agreement, and *if* the City levies special assessments upon the properties, the third-party beneficiaries of the agreement may assert a claim against Field for any damages sustained by them as a result of Field's contract breach. Even in the event of such occurrence, however, the entry of any judgment against Field for damages suffered by the association and the unit owners would have no effect upon the City's freedom of action.

### IV.

■ Field finally argues that, because the Time Delay Agreement stated no definite time for the joint venture's payment, the court should imply a reasonable time therefor and hold that, since the City has not requested payment within a reasonable time, the joint venture's promise cannot be enforced. We reject this argument.

The rule relied upon by Field is one that is employed to interpret a contract so as to render it enforceable. *See, e.g., Shull v. Sexton*, 154 Colo. 311, 390 P.2d 313 (1964).

■ However, if, as here, the performance by one party is made dependent upon the occurrence of an event, and there is no provision that such event must occur within a reasonable time, the courts may not condition the obligation to perform upon the happening of that event within a reasonable time, even if the time for occurrence of that event rests within the control of the other party. To imply such a term under those circumstances would be to engraft upon the agreement a provision not agreed to by the parties. *Cheney v. Barber*, 1 Colo. 256 (1871).

The judgment of the district court is affirmed.

MARQUEZ and TAUBMAN, JJ., concur.