Argued on demurrer to alternative writ July 23, writ dismissed July 30, 1926.

## PALMER L. FALES v. MULTNOMAH COUNTY ET AL.

### (248 Pac. 151.)

Counties.
   1. In construing Section 4641, Or. L., relative to road bonds redeemable serially, whole County Road Bonding Act will be considered to determine legislative intent.

Statutes.
   2. Intention of statute, when ascertained, controls in construction of its parts.

---

2. See 25 R. C. L. 967.

Counties.

3. County's power is only coextensive with power expressly granted by statute or reasonably implied therefrom.

Statutes.

4. When statutory power is given, everything necessary to make it effectual is given by implication.

Counties—Permanent Road Construction Bonds may be Redeemed in Equal Amounts on Certain Day Each Year Beginning Six Years After Issuance, Though Notice of Election Authorizing Them Announced Maturity in Thirty Years (Const., Art. IV, § 1A; §§ 4625, 4630, 4634, 4638, 4641, 5062, Or. L.; Laws 1923, p. 274)—"Reserving"—"Reservation"—"Serially."

5. Permanent road construction bonds may be redeemed in equal amounts on certain day each year beginning six years after issuance, though notice of election authorizing them announced maturity in thirty years, in view of Constitution, Article IV, Section 1A, and Sections 4625, 4630, 4638, 4641, Or. L., since legislature is presumed to have knowledge of Section 5062, Laws of 1923, page 274, authorizing "callable" and "optional" school bonds in enacting Section 4641, Or. L., relative to redeeming road bonds "serially," and words "reserving" and "reservation" therein indicate County Court's right to redeem bonds "serially," which means in series of which different parts are redeemable at different specified dates.

Counties—Legislature can Authorize County Officers to Issue Road Bonds Redeemable Serially After Notice of Election Authorizing Them had Announced Maturity in Thirty Years.

6. Legislature can appropriately vest in county officials authority to issue road bonds redeemable serially, beginning when sinking fund is available for such purpose, after notice of election authorizing them had announced maturity in thirty years.

Counties, 15 **C. J.**, p. 389, n. 7, 8, 9, p. 419, n. 98, p. 617, n. 41, p. 624, n. 92.
Municipal Corporations, 28 **Cyc.**, p. 1575, n. 47.
Reserve, 34 **Cyc.**, p. 1640, n. 12, 13.
Serially, 35 **Cyc.**, p. 1429, n. 2 New.
Statutes, 36 **Cyc.**, p. 1106, n. 29, p. 1107, n. 30, p. 1128, n. 54, p. 1147, n. 30.

Original proceeding in *mandamus.*

WRIT DISMISSED.

For petitioner there was a brief over the name of *Messrs. Emmons, Lusk & Bynon,* with an oral argument by *Mr. Hall S. Lusk.*

3. See 7 R. C. L. 936.
4. See 25 R. C. L. 980.

For defendants there was a brief over the name of *Mr. Samuel H. Pierce,* Deputy District Attorney, with an oral argument by *Mr. Stanley Myers,* District Attorney.

BEAN, J.—This is an original proceeding in *mandamus,* brought by the petitioner, a resident taxpayer and legal voter of Multnomah County, Oregon, to compel the county and its commissioners to proceed in accordance with law in the issuance of certain county road bonds authorized by the voters at a special election held on the date of the primary nominating election, May 21, 1926. The case comes before the court on a demurrer to the alternative writ of *mandamus.*

From the writ it appears that permanent road construction bonds of Multnomah County, amounting to $2,500,000, were authorized by the electors at the special election so held. The notice of this election stated that the bonds should mature in thirty years. On June 23, 1926, the county commissioners ordered the issuance and sale of $750,000 of such bonds. By this order it was provided that the bonds to be issued should be in denominations of $1,000 each, dated August 12, 1926, should be numbered serially from one to 750, and should mature and be redeemable in equal amounts beginning the first day of August, 1932, and the first day of August of each and every year thereafter until August 1, 1956. By this method thirty bonds would mature each year beginning with the sixth year after the date of issuance.

Petitioner contends that the County Road Bonding Act does not authorize the issuance of the bonds to mature in such manner, but that one or the other of the two following systems of maturities should

119 Or.—9

be followed: (1) That all of said bonds so issued
should mature and be payable in a block uncondi-
tionally at the expiration of the thirty year term
specified in the election notice, or (2) that said
bonds should mature and be payable at the end of
said thirty-year period, with the right reserved by
the county to redeem an equal amount each year, be-
ginning with the first year.

The demurrer raises the question of the validity
of the $750,000 issue of bonds with maturities from
the sixth to the thirtieth year from date, in ac-
cordance with the order of the board of commis-
sioners dated June 23, 1926.

Article IV, Section 1A of the Constitution ordains
in part as follows:

"The initiative and referendum powers reserved
to the people by this constitution are hereby further
reserved to the legal voters of every municipality and
district, as to all local, special, and municipal legis-
lation of every character, in or for their respective
municipalities and districts. The manner of exercis-
ing said powers shall be prescribed by general laws,
except that cities and towns may provide for the
manner of exercising the initiative and referendum
powers as to their municipal legislation."

Section 4625, Or. L., provides as follows:

"Bonds may be issued by any county in this state
for the purpose of raising money to be used for the
construction and maintenance of permanent roads in
that county as hereinafter provided."

The act then provides the manner of calling and
holding elections, pursuant to a petition of the voters
of a county under the Initiative and Referendum
Law, and Section 4634, Or. L., which provides that
the County Court of its own motion may submit the

question of issuing bonds for road construction and maintenance.

Section 4638, Or. L., is as follows:

"Beginning with the fourth year after the bonds are sold the county court shall each year thereafter, until the maturity of bonds, set aside as a special fund for the payment of the bonds such percentage of the face value of the bonds as at the date of their maturity shall aggregate the full face value thereof. *Where bonds are issued in different series maturing at different times a separate redemption fund shall be provided for each series of such bonds.* The amount necessary to provide this redemption fund and to pay the annual interest on outstanding bonds shall be added to the general levy of taxes as may be required, which tax shall be levied upon all the taxable property within the county." (We call attention to a portion by italic.)

Section 4641, Or. L., which was not a part of the original act, but was added as an amendment by Chapter 12, General Laws of Oregon, for 1917, reads as follows:

"After the issuance of bonds has been authorized by an election held in accordance with the provisions of this act, the county court may, in its discretion, in lieu of bonds redeemable only at the time stated in the notice, issue bonds, reserving the right to redeem them or any portion thereof serially each year, and make such reservations in the order providing for their issuance. When bonds are issued with such reservation, the redemption fund provided for in this act may be used each year, as it is collected, for the redemption of such proportion or percentage of such bonds as will redeem all of them at the end of the time fixed in the prior proceedings for the maturity of such bonds, instead of being kept and deposited or loaned as provided in this act until the final maturity of the bonds."

It is apparent that the two latter sections provide two plans for the redemption of bonds, either one of which may be followed by the county commissioners in their discretion.

1,2. The form of notice of election in Section 4630, Or. L., provides for the submission of the question of issuing straight term bonds, all due upon a certain date, or in a certain number of years. This section provides the form of special election notices, and contains the provision that of the bonds to be authorized, "no more than —— dollars to be issued in any one year." This section requires that the notice shall specify, among other things, the length of time that the bonds shall run. Section 4641 was evidently added to the act for the express purpose of authorizing serial bonds. Section 4638, which is a part of the original act, already provided that where bonds are issued in different series *"maturing at different times* a separate redemption fund shall be provided for each series of such bonds"; but to follow the form of notice and direction of the statute there was no provision for issuing bonds, of one issue, due at different dates, or serial bonds; hence the act of 1917 adding Section 4641, Or. L., for the express purpose of authorizing serial bonds. This was enacted in order to use the special, or sinking fund, required to be set aside each year, commencing the fourth year after the bonds are sold, until the maturity of the bonds. For a county to hold such funds, it would be impossible to realize as high a rate of interest as it would be required to pay on the bonds. This was the evil (if money can be considered an evil) which the legislature in its wisdom saw fit to correct by the enactment of Section 3641. Some of the language of the latter section is

cloudy and inapt. The question in this case largely depends upon the construction of it. However, in construing this section the whole act must be looked to and considered and the intent of the lawmakers culled out, if possible, from the language of the act. The amendatory act provides no manner of exercising an option to redeem the bonds, either by giving notices to holders thereof or otherwise. The intention of a statute, when ascertained, controls in the construction of its parts: 2 Lewis' Sutherland on Stat. Const., § 347.

3, 4. Counties are created for purposes of government and authorized to exercise to a limited extent a portion of the power of the state government. They have always been held to act strictly within the powers granted by the legislative acts establishing and controlling them. The statute is to them their fundamental law and their power is only co-extensive with the power thereby expressly granted, or necessarily or reasonably implied from their granted powers: 2 Sutherland on Stat. Const. (2d ed.), § 551, 28 Cyc. 1575C. When a power is given by statute everything necessary to make it effectual is given by implication: 7 R. C. L., § 14.

5. The issue of term bonds, or those that become due and payable at one time, is becoming less and less frequent, and the issue of serial bonds is made mandatory by some statutes. Callable bonds, sometimes called redeemable, or optional bonds, which kind of school bonds are provided for by Section 5062, Or. L., being the act of 1913, "redeemable at the pleasure of the (school) district, but due and payable absolutely twenty years from date," are denominated term bonds, which may be called for payment before their maturity. This is in order that

the issuing municipality may redeem its indebtedness if it chooses to exercise the option, without being obliged to do so. Very few of such bonds are called for payment before their maturity. They do not sell at the same price as they would for the term without the optional feature, since for the purpose of computing the selling price or basis, the bond is treated as running only to the optional date and not to maturity: Fraser Brown-Mun. Bonds, p. 73 et seq.

The provision for issuing school district bonds contained in the statute to which we have referred was not found practicable. A less amount of funds was realized from the sale of such bonds than would have been realized if the bonds had not been redeemable before a specified date.

The more modern method was adopted by the enactment of Chapter 190, General Laws for 1923, which is in part as follows:

"All school bonds hereafter issued by any school district in this state shall be made to mature at such time or times as the directors of the district may, at the time of providing for the issuance thereof, determine, but shall in any case mature not later than 20 years from the date of such bonds."

The legislature is presumed to have had knowledge of the law regulating the issue of school district bonds, and had it desired to enact a law authorizing "callable bonds," "optional bonds," or bonds redeemable at the pleasure of the county, or bonds redeemable at the end of a certain number of years, with an "alternative right," as mentioned in the brief of plaintiff, it would seem that somewhere in the statute they would have used one of those terms, or some similar term.

On the other hand, instead of making a provision for an option of redemption in the bond, the statute under consideration specifically requires that the County Court in its discretion, if it adopts the second method mentioned, may "make such reservations in the order providing for their [the bonds'] issuance." This provision indicates that it was the intention of the lawmakers to inhibit the insertion of an optional feature in the bonds. As to the word "reserving" found in Section 4641, Or. L., we are unable to conjecture its source. We are inclined to think that it was derived from the Constitution, above quoted, reserving the right to enact local and special measures. If this Section (4641) is construed to direct optional bonds, then the provision in Section 4638, that "where bonds are issued in different series maturing at different times, a separate redemption fund shall be provided for each series of such bonds," could not be applied. The obvious intent of the legislature was to make provisions for applying the special, or sinking fund, to the payment of the bonds, after the collection of such fund, which is required to be added to the general tax levy. To dissect the true meaning of Section 4641, it is imperative that it be considered particularly together with Section 4638, Or. L.

There is also a provision in Section 4641 that the time to redeem the bonds, or any portion thereof, should be "fixed in the prior proceedings for the maturity of such bonds." The part of the proceedings here referred to is unquestionably the order of the county board providing for their issuance. In short, the words "reserving" and "reservation" as used in this section, are employed to indicate that the County Court has the right to redeem the bonds serially.

The word "reserve" is defined by Webster's New International Dictionary to mean—"to retain; to keep; * * to keep back." The drafter of the act in question employed the word to declare that the County Court had the right to redeem the bonds. The procedure followed by Multnomah County was practically sanctioned in the case of *First Nat. Bank* v. *Yamhill County,* 110 Or. 74 (222 Pac. 1077); see, also, *Brown* v. *Silverton,* 97 Or. 441, 451 (190 Pac. 971).

The right of a county to redeem such an issue of bonds serially each year is clearly conferred by the statute. The word "serially," when used in this connection, is defined by Webster's New International Dictionary to mean—"designating bonds, notes, etc., in a series of which different parts are redeemable at different specified dates." If bonds are redeemable at the option of the county they would be payable at a "specified date." The amendatory act was passed to accelerate the county financing. Before its enactment a county could issue bonds redeemable in the manner proposed by the county of Multnomah as to the current issue. See *Clark* v. *Hood River County,* 73 Or. 336, 340 (143 Pac. 897). In that case the petition and the notices for a bond election recited that the bonds were to be redeemed one tenth annually, beginning at the end of the tenth year.

In *Elliott* v. *Tillamook,* 86 Or. 427, at page 431 (168 Pac. 77), referring to Section 3, Chapter 103, General Laws of Oregon 1917 (now Section 4641, Or. L.), Mr. Justice BURNETT remarked:

"If that attempted enactment is valid, the power conferred can be employed without any request therefor or limitation thereof by the registered voters as

to the payment of the bonds serially. The statement of such matters in the petition and notices was superfluous, * * ."

In other words, under the law as amended, it is not essential to state in the petition and notice for a bond election more than the final date at which the bonds will become due, and not the different due dates if issued redeemable serially each year.

6. The amendatory act proceeds upon the theory that the greater indicates the less, that is, if the electors of a county authorize the issuance of bonds payable, say, for example, in thirty years from date, the County Court in their discretion, which is exercised by means of an order, can issue such bonds redeemable serially each year, beginning at a specified date when the sinking fund is available for the purpose of such redemption. In view of the fact that a county is an agency or arm of the state, the legislature can approximately vest such authority in the officials of a county: 15 Cyc. 388, § 1.

In the present case all of the constitutional and statutory requirements, to pave the way for the issuance of the bonds, were complied with. The board of commissioners are authorized to issue and sell the bonds in the manner contemplated.

The demurrer to the alternative writ is sustained and the cause is dismissed.

DEMURRER SUSTAINED.

RAND and COSHOW, JJ., took no part in the opinion.

BURNETT, J., concurs in the result.