Argued and submitted March 7; resubmitted In Banc September 4, 1997, reversed and remanded February 25, petition for review denied July 14, 1998 (327 Or 431)

# CITY OF EUGENE,
## a municipal corporation,
### *Respondent,*

*v.*

# Barbara Kashin NALVEN,
### *Appellant.*

## (16-95-06123; CA A93715)

955 P2d 263

Michael D. Linick argued the cause and filed the briefs for appellant.

Jens Schmidt argued the cause for respondent. With him on the brief was Harrang Long Gary Rudnick P.C.

LANDAU, J.

Edmonds, J., dissenting.

**LANDAU, J.**

In this action for declaratory and injunctive relief, the City of Eugene (City) seeks to compel defendant to connect her residence, located outside the City's corporate limits, to the City's sanitary sewer system. Defendant contends that the City cannot compel an extraterritorial connection without providing notice to the affected property owner, holding hearings and establishing the inadequacy of her current system. The City contends that state statutes either expressly or impliedly authorize it to compel connection on demand. Both parties moved for summary judgment. The trial court granted the City's motion, denied defendant's motion and entered judgment requiring defendant to connect to the City's sewer system. On appeal, defendant contends that the trial court erred in granting the City's motion and in denying hers. We agree and reverse and remand for entry of judgment in favor of defendant.

The relevant facts are not in dispute. Defendant owns real property in Lane County in what is known as the "River Road" area. Although the area around the property is bordered on three sides by property within the City, defendant's property is located approximately one-half mile outside the City's corporate limits. There is a house on defendant's property, which contains plumbing fixtures that discharge wastewater. The City created a local improvement district for the purposes of installation and operation of sanitary sewers. Defendant's property is located within the local improvement district and is within 160 feet of a City sanitary sewer line that apparently is located on a right-of-way in the unincorporated area. The City demanded that defendant connect her house to the City system. Defendant declined.

In its complaint, the City claimed authority to compel individuals outside the City limits to connect to the City system under Eugene Municipal Code section 6.471(1), which provides:

> "[W]ithin the city or within a local improvement district for wastewater sewers created by the council, all structures in which plumbing fixtures are installed or which discharge wastewater and are located within 160 feet of the city

wastewater system or of a public right-of-way containing the city wastewater system shall be connected to the city wastewater system in a manner prescribed by this code and shall discharge all wastewater into such system."

In her answer, defendant alleged that, among other things, the City lacks authority to compel owners of property located outside the City's municipal boundaries to connect to the City system. Eugene Code section 6.471(1), she contended, is invalid because it is inconsistent with state law and Lane County ordinances that limit the extent to which cities may exercise authority beyond their corporate boundaries.

In her motion for summary judgment, defendant contended that, although other statutes and ordinances may authorize cities to compel extraterritorial sewer connections, the City did not comply with the requirements of any of them. Specifically, defendant noted that Lane County Code section 9.410 *et seq* permits cities to compel extraterritorial connections only after notice to affected property owners and express findings "that the property is serviced by an inadequate sewerage disposal system."

In its motion for summary judgment, the City conceded that Lane County Code section 9.410 provides authority to compel extraterritorial sewer connections only on specified conditions and further conceded that it had not complied with any of those conditions. The City nevertheless contended that it derives its authority to compel extraterritorial connections from ORS 224.020, which provides authority to do "all things * * * which may be deemed necessary or essential for the proper disposal of sewerage and drainage from the city and adjacent territory."

Defendant replied that, among other things, the City reads too much into ORS 224.020. According to defendant, the statute speaks to the authority of the City to acquire extraterritorial property, by purchase or condemnation, to construct and maintain a sewerage system, and—in that context—to do whatever is necessary to dispose of sewage and drainage from the adjacent territory. Alternatively, defendant argued that, even if ORS 224.020 applies, the authority it creates is limited to "adjacent" territory, and her property is not adjacent to any City boundary. The City replied that

her property is located in "adjacent territory" to the City, and that is all the statute requires.

On appeal, the parties reassert essentially the same arguments. Defendant argues that the City lacks authority to compel extraterritorial sewerage system connection simply on demand and without proof of need as required in Lane County Code section 9.410 *et seq.* The City contends that either ORS 224.020 expressly grants it the authority to demand connection without any proof of need or that that statute and others on the general subject of sewerage system construction impliedly create such authority.[1]

██ A city generally may exercise authority only within its corporate limits. Eugene McQuillin, 11 *The Law of Municipal Corporations* § 31.16, 226-27 (3d ed 1991) (cities generally do not have authority to construct sewer systems beyond city limits). The sole exception to that general rule is that a city may exercise authority outside its boundaries when a jurisdiction from which it draws its power to act—a county or the state—grants it that authority. *See, e.g., State v. Port of Astoria,* 79 Or 1, 19, 154 P 399 (1916) ("permission to employ extramural authority must be granted to cities and towns before the privilege can be exercised"). Thus, for example, a city cannot levy a special assessment district that includes land outside the city limits, unless a statute confers on that city the authority to do so. *City of Klamath Falls v. Lewis,* 24 Or App 703, 705, 546 P2d 1113 (1976). *See also generally* McQuillin, 14 *The Law of Municipal Corporations* § 38.52, 200 (3d ed 1987).

██ That exception to the general rule has been qualified further by a requirement that any grant of extramural authority be "clearly expressed." As the Supreme Court explained in *Richards et al v. City of Portland et al,* 121 Or 340, 345, 255 P 326 (1927):

---

[1] The dissent states that it is "noteworthy" that defendant does not challenge the lawfulness of the formation of the local improvement district. 152 Or App at 731-32. The dissent certainly is correct that defendant has not made that argument. The observation, however, is not relevant to the disposition of this appeal. The City has claimed express authority under ORS 224.020, not statutes concerning the formation or operation of the local improvement district, and we limit our analysis to that issue.

"It is elementary that a municipality, acting either in its governmental or proprietary capacity, can do so only by virtue of express or implied authority conferred upon it. Ordinarily, the jurisdiction of a municipality ceases at its boundaries and for it to exercise extraterritorial jurisdiction its powers to do so must be clearly expressed[.]"

In other words, although municipal authority generally may derive from express or implied grants from the state, the power to act beyond municipal boundaries may not be implied and instead must be based on an expressed—indeed, on a *"clearly* expressed"—conferral of authority.

In this case, the City contends that it obtains its "clearly expressed" conferral of extraterritorial authority from the last sentence of ORS 224.020. The complete statute provides:

"Whenever the council of any city deems it necessary or expedient to construct a sewer partially within and partially without the city, or to construct a sewer outlet, or do any other work, acts or things without the city for proper disposal of sewerage and drainage, the city, through its council, may acquire by purchase, condemnation or otherwise, any property rights of way, easement and other rights without the city as may be needed or deemed essential for the construction of the sewer, sewer outlet, or other works. It may also provide for and do all things which may be necessary or deemed essential for proper construction of such sewer, sewer outlet, and for other works, acts and things which may be deemed necessary or essential for the proper disposal of sewerage and drainage from the city and adjacent territory."

ORS 224.020. In examining the intended scope of the authority conferred by that statute, we do not parse the meaning of the words in a vacuum. We consider other statutes *in pari materia,* if not strictly speaking as "context" of the statute—because the other statutes were later enacted, *see Stull v. Hoke,* 326 Or 72, 79-80, 948 P2d 722 (1997)—then certainly because of our obligation to give full meaning and effect to all

relevant statutory provisions. In that regard, we note that at least two other statutes do confer authority on municipalities to act beyond their boundaries with respect to the construction of sewers, both subject to substantial conditions.

First, ORS 225.030 provides that cities that own a system of waterworks "may sell, supply and dispose of water * * * from such system" both within and without the city limits and "may make contracts in reference to the sale and disposal of water * * * from such system * * *."[2] The statute has been construed to allow individuals outside city limits *voluntarily* to contract with a city to provide sewer services. *Bell v. City of Corvallis*, 25 Or App 821, 828-29, 551 P2d 125, *rev den* (1976).

Second, ORS 222.840 *et seq* provides that cities may compel annexation of unincorporated areas within an urban growth boundary, without consent by the owners of the property, to construct sewage, garbage or other treatment works.[3] Cities may do so, however, only after giving notice to the property owners, conducting hearings and making express

---

[2] ORS 225.020 provides, in part:

"(1) When the power to do so is conferred by or contained in its charter or act of incorporation, any city may build, own, operate and maintain waterworks, water systems, railways and railroads, electric light and power plants, within and without its boundaries for the benefit and use of its inhabitants and for profit."

ORS 225.030 then provides:

"Any city owning, controlling or operating a system of waterworks or electric light and power system for supplying water or electricity for its inhabitants and for general municipal purposes, and any person, persons, or corporation controlling or operating any water system or electric light and power system under contract, lease or private ownership, may sell, supply and dispose of water or electricity from such system to any person, persons, or corporation within or without the limits of the city in which the water or electric light and power system is operated, and may make contracts in reference to the sale and disposal of water or electricity from such system, for use within or without the corporate limits."

[3] ORS 222.855 provides, in part:

"[T]erritory otherwise eligible for annexation * * * which is within the urban growth boundary of a city may be annexed by passage of an ordinance * * * without any vote in such territory or any consent by the owners of land therein if it is found * * * that a danger to public health exists because of conditions within the territory and that such conditions can be removed or alleviated by sanitary, water or other facilities ordinarily provided by incorporated cities."

findings that a danger to public health justifies the compelled annexation. ORS 222.870; ORS 222.875.[4]

We also note that there exists a Lane County ordinance that confers authority on the City to compel extramural connection to the City sewer system in limited circumstances. To rely on that ordinance, however, the City must provide notice to affected property owners, conduct hearings and make express findings "that the property is serviced by an inadequate sewerage disposal system." Lane County Code § 9.420.[5] Interestingly, that code provision originated with a request *by the City* for an ordinance clearly conferring authority to compel extramural connections, because the City believed it needed such an ordinance to satisfy a federal Environmental Protection Agency sewerage construction grant requirement that there be authority to require nonresidents to connect to the City system. At the time, the City believed that the other statutes aforementioned did not confer authority on it to compel extramural sewer system connections. Since the adoption of that county code provision, however, the City concluded that it was too time consuming and expensive to provide notice to property owners and to

---

[4] Among other things, the statutes require the notice to describe "the conditions alleged to be causing a danger to public health." ORS 222.860(1)(b). The statutes then require the governing body of the area to adopt a resolution containing an annexation proposal that describes the boundaries of the affected area and the nature of the public health hazard. ORS 222.860(2). The governing body then is required to have the local board of health verify the existence of the public health hazard. ORS 222.860(3). The governing body then is required to send a request to the state Health Division to verify the existence of a threat to public health. ORS 222.860(4). At that point, the division is to review the matter, and, if it finds substantial evidence of a public health hazard, it must issue an order for a hearing to be held in the affected territory not sooner than 30 days from the date of the order. ORS 222.870. Within 60 days of the hearing, the division is required to issue findings as to the nature of the threat to public health. ORS 222.875(1). If the division makes the appropriate findings, only then may the municipality commence proceedings to compel annexation and construction of sanitation facilities. ORS 222.897.

[5] The Lane County Code provides:

"Local Government Actions. Before a property is determined to be an affected property, the City Council controlling the sanitary sewerage system must have levied against the property a special benefit assessment for a sanitary sewer and the Land County Hearings Official must have determined that the property is serviced by an inadequate sewerage disposal system."

Lane County Code § 9.420 (underscoring in original).

hold hearings.[6] Accordingly, the City enacted its own ordinance, Eugene Code section 6.471, which purports to authorize the City to compel any structures located within 160 feet of the City's jurisdiction to connect to the City's sewerage system.

■    With those relevant, related provisions in mind, we turn to the language of ORS 224.020. The first sentence of the statute plainly is limited to a grant of authority to acquire extraterritorial property rights needed to construct a city sewer system. It affords no authority to compel anyone to connect with such a system. The second sentence authorizes cities to take other actions "which may be necessary or deemed essential for proper construction of such sewer * * *." That, too, provides no authority for extraterritorial connections. Finally, the statute permits cities to take other action "necessary or essential for the proper disposal of sewerage and drainage from the city and adjacent territory." That provision, by its terms, does not mention compelling extraterritorial connection. That comes as no surprise, given its immediate context, which is authorization to acquire extraterritorial property to facilitate the construction of a city sewer system, not the acquisition of additional sewage to collect through the system. There is mention of disposal of sewerage and drainage from "adjacent territory." We find the City's contention that those two words constitute an express authorization to compel extraterritorial connection implausible, however, for several reasons.

First, the text of the statute itself militates against such a construction. To construe "adjacent territory" as the

---

[6] In his deposition, Terry Smith, of the Eugene Public Works Department, testified that he told the Lane County Board of County Commissioners that the City lacked authority to require residents in unincorporated areas of the county to connect to the City sewer system. He further testified that the Environmental Protection Agency required, as a condition of awarding sewerage construction grant funding, the adoption of an ordinance expressly documenting the City's authority to require extraterritorial connections. He explained that the ordinance was drafted by the Eugene City Attorney's Office for that purpose. He finally testified that, following informal discussions with the Lane County Board of County Commissioners about the inadequacy of current sewage disposal systems in unincorporated areas of the county, the City concluded that establishing the need for compelled connection to the City system was a "moot point" and that it "seemed a waste of taxpayer dollars" to go through the notice and findings process that Lane County Code section 9.420 required.

City suggests ignores the context of the statute's authorization to acquire extraterritorial property and take other measures to ensure the proper construction and operation of the system that a city may construct. Nowhere does ORS 224.020 speak to the subject of acquiring *additional* sewage for that system to process through compelling connection to households located outside city limits.

Second, the reference to "adjacent territory" also must be considered in the context of the other statutes mentioned above, which permit persons outside city limits *voluntarily* to connect to a city sewer system. ORS 224.020, in fact, has been mentioned in the context of voluntary contracts to provide service to persons in territory adjacent to a city. *Bell*, 25 Or App at 826-27. In that light, the reference to "adjacent territory" makes perfect sense and is consistent with other relevant statutes.

Third, the City's reading of the term "adjacent territory" to authorize compelled extraterritorial sewerage system connections on mere demand conflicts with ORS 222.840 *et seq*, which expressly allows cities to compel extraterritorial connections, but only after notice, hearings and findings of public health necessity or existing system inadequacies. ORS 222.875. If the City is correct that it lawfully may enact an ordinance that simply declares that any structure within a certain distance from the City's boundaries must connect to the City sewer system—without notice to affected landowners, without any hearings and without any findings as to the adequacy of existing systems—then ORS 222.840 *et seq* effectively has been eviscerated. We are constrained not to interpret statutes in a manner that renders the legislature's handiwork meaningless, if possible. ORS 174.010.[7]

---

[7] The dissent takes us to task on this point on two grounds. First, it contends that we fail to recognize that these statutes "were promulgated by the legislature to address different problems[.]" 152 Or App at 734-35. That the legislature may have had other problems in mind is, of course, true enough. But it is also beside the point, which is that, under the City's and the dissent's reading of ORS 224.020, the other statutes are not merely limited to "different problems," but are rendered entirely superfluous.

Second, the dissent contends that we have "thrown judicial caution to the winds" and that we have "created an issue not raised below and not addressed by the parties." 152 Or App at 736 n 2. According to the dissent, whether the City's construction conflicts with the notice provisions of ORS 222.840 *et seq* is not before

The City insists that the authority to construct systems to dispose of waste from "adjacent territory" must imply the authority to collect it. The City's argument, however, is a *non sequitur*. Particularly in light of the aforementioned statutes that permit *voluntary* extraterritorial sewer system connections, it does not necessarily follow that the reference in ORS 224.020 to disposal of waste from "adjacent territory" means that the City can *compel* involuntary sewer system connection.[8]

■ The City alternatively argues that ORS 454.805 "specifically recognizes a municipality's authority to require property owners to connect their homes to the sewer system." In that regard, the City certainly is correct, but its observation does not advance its cause. ORS 454.805 provides that "[w]hen a municipality requires property owners to connect their homes" to a city sewer system, it may assess the installation costs against the property owners. The statute does not mention requiring property owners *located outside a city's boundaries* to connect to any system. In any event, it is not contested that a municipality, in some circumstances, may compel extraterritorial sewer system connections; that much is clear from ORS 222.840 *et seq*. The question is whether a

us, because defendant has not complained that she did not receive notice. Whether or not defendant in this case received notice, the fact remains that, under the City's and the dissent's reading of ORS 224.020, related statutes would be meaningless as a matter of law. Whether or not a party argues the point, we always must construe statutes in light of other relevant statutes to ensure that we do not create unnecessary conflicts in statutory interpretation or—as the dissent apparently would have us do in this case—deprive the other statutes of any meaning. *See, e.g., Stull,* 326 Or at 77 ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

[8] The dissent ignores this point in contending that "[i]t belies common sense" to believe that the legislature would mention proper disposal of sewage from adjacent territories "without also granting the authority to compel" connection to the system. 152 Or App at 735-36. According to the dissent, reading ORS 224.020 not to provide authority to compel extraterritorial connections "leaves the statute's purpose unfulfilled." *Id.* at 736. It "belies common sense" to arrive at that conclusion only if it is assumed that the City has that authority in the first place. Likewise, the statute's purpose is left unfulfilled under our reading of the statute only if it is assumed that the purpose of the statute is to authorize compelled extraterritorial connections. The dissent's argument thus amounts to mere question begging. On the basis of the language of ORS 224.020 alone, it is at least equally plausible that the statute's purpose is to authorize cities to take necessary measures to enable the disposal of sewage already lawfully collected from beyond the City limits, as other statutes permit. And, on the basis of the contextual references we have cited, that is the only construction that gives meaning to all relevant statutory provisions.

city may do so by mere declaration, without notice to affected landowners, opportunity for a hearing and findings of public health need or existing system inadequacies. ORS 454.805 says nothing about that.

The City also argues that ORS 454.215(1) similarly authorizes it to compel owners of property outside its municipal boundaries to connect to its sewer system. That statute provides, in relevant part:

> "Any municipality may own, acquire, construct, equip, operate and maintain, either within or without its statutory or corporate limits, in whole or in part, disposal systems with all appurtenances necessary, useful or convenient for the collection, treatment and disposal of sewage. The municipality may acquire by gift, grant, purchase or condemnation necessary lands and rights of way therefor, either within or without its statutory or corporate limits."

ORS 454.215(1). The statute thus clearly authorizes the acquisition of property outside of municipal boundaries to facilitate the operation of a city's sewer system. Nowhere, however, does it expressly or impliedly authorize compelling the addition of customers to the system.

In short, none of the City's arguments supports its ultimate contention that it has statutory authority merely to declare by ordinance that property located outside of its municipal boundaries must connect to its sewage disposal system. None of the statutes on which it relies grants it such extraterritorial authority. At the very least, those statutes are reasonably capable of more than one construction and do not satisfy the "clearly expressed" grant of extramural authority that the law requires. *Richards*, 121 Or at 345. We conclude, therefore, that the trial court erred in granting the City's summary judgment motion and in denying defendant's motion.

Reversed and remanded for entry of judgment in favor of defendant.

**EDMONDS, J.,** dissenting.

Defendant's property is within a local improvement district formed by the City for the purposes of construction of and assessments for a sanitary sewer system. Defendant's

property is approximately one-half mile from the boundaries of the City and is in an area that is surrounded on three sides by property within the City. According to its complaint seeking a mandatory injunction, the City's sewer has been available for connection to defendant's property since 1991, but defendant refuses to connect to it. This action seeks to compel that result, and the trial court granted summary judgment in favor of the City. On appeal, defendant argues that the City does not have authority to compel her to connect to the sewer, that the City's ordinance compelling her to connect is overbroad because her property is not within the City or adjacent territory, that a Lane County ordinance has preempted the City's authority to compel connection and that the relevant City ordinance is unlawful or unconstitutional because owners of properties outside the City are not provided with the same exemptions from connection that are available to City residents. It is noteworthy that defendant does not raise challenges that her property is not within the local improvement district formed by the City or that its formation was defective.

The threshold issue is whether the City has statutory authority to compel defendant to connect to its sewer under the circumstances. The City relies on ORS 224.020. It provides:

> "Whenever the council of any city deems it necessary or expedient to construct a sewer partially within and partially without the city, or to construct a sewer outlet, or do any other work, acts or things without the city for proper disposal of sewerage and drainage, the city, through its council, may acquire by purchase, condemnation or otherwise any property rights of way, easement and other rights without the city as may be needed or deemed essential for the construction of the sewer, sewer outlet, or other works. It may also provide for and do all things which may be necessary or deemed essential for proper construction of such sewer, sewer outlet, and for other works, acts and things which may be deemed necessary or essential for the proper disposal of sewerage and drainage from the city and adjacent territory."

When interpreting a statute, our task is to discern the intent of the legislature by first examining the text and

context of the statute. It is clear from the text of the statute that the legislature has authorized cities to construct sewer systems in areas beyond their territorial boundaries. It is equally clear from the text of the statute that the legislature has authorized cities to "do all * * * works, acts and things which may be deemed necessary or essential for the proper disposal of sewerage * * * from * * * adjacent territory." Obviously, "proper disposal of sewerage" from adjacent territories cannot occur unless it is collected into the system through connections with residential plumbing systems. Thus, it is clear from its text that ORS 224.020 contemplates that affected individuals connect to systems constructed under the authority of the statute. Otherwise, the statute means that the cities are authorized to construct extraterritorial sewage collection systems, but no one is required to connect to them. The legislature could not have intended such a result.

The context of the statute confirms the meaning of the text. Unlike the other statutes relied on by the majority, ORS 224.020 is part of a statutory scheme that provides for the constructions of sewer systems and the assessment of benefitted properties both within and outside of City boundaries. *See* ORS 224.010 *et seq.* Specifically, the scheme expressly provides for assessment of properties outside the City and the collection of the assessments by the City. ORS 224.040. Under ORS 224.050, owners of affected property outside the City are granted "opportunities of remonstrance" and "notice" in the same manner as City residents. Under ORS 224.065, those individuals whose properties have been assessed may seek a writ of review under the provisions of ORS 34.010 to ORS 34.100. An assessment made on property under the statutes is lienable, ORS 224.090, and, as a result, property outside the City limits can be foreclosed on under ORS 224.110 or sold without foreclosure. ORS 224.120. Additionally, a city may construct extensions of the system beyond the city limits in adjacent territories under the terms and provisions applicable to the original construction as it continues to operate and control the system. ORS 224.140. In sum, the context, as well as the text of ORS 224.020, demonstrate clearly that the legislature intended that cities construct and operate sewerage systems and provide for the

proper disposal of sewerage in areas adjacent to their boundaries.

Despite the express language of ORS 224.020 and its companion statutes, the majority holds that it cannot be properly inferred that the statute authorizes the City to compel defendant to connect to its sewer system. It reasons that because the statute does not expressly provide that a resident of an affected area must connect to a municipal sewer system constructed outside its boundaries, there is no indication that the legislature intended that result. As I have pointed out, one need go no further than to read the plain language of ORS 224.010 *et seq* to arrive at the opposite conclusion. Nonetheless, the majority undertakes a journey that encompasses case law and other statutes and ordinances to support its reasoning. However, even those authorities support my interpretation of the statute.

The majority relies first on the holding in *Richards et al. v. City of Portland et al.,* 121 Or 340, 255 P 326 (1927), for the general proposition that the authority of a city to act beyond its boundaries must be clearly expressed. In my view, ORS 224.020 does precisely that, and *Richards* is instructive as to that conclusion. In *Richards*, the issue was whether a city could supply water to consumers beyond its corporate limits. The applicable law authorized the city to provide water only to its residents. The court said, "[p]ower granted to supply the inhabitants of the City of Portland with water does not carry with it the implied authority to furnish water to those who are not its inhabitants." *Id.* at 345. The contrast between the facts in *Richards* and the facts in this case identify the difference between the two cases. Here, ORS 224.020 *expressly authorizes the City to act beyond its boundaries* and to construct sewer systems to provide for the *"proper disposal"* of sewerage from areas outside the City limits. (Emphasis supplied.)

Next, in an effort to bolster its conclusion, the majority turns to ORS 225.030 and ORS 222.855.[1] The former

---

[1] The majority also relies on the provisions of Lane County Code section 9.410 in its analysis. That ordinance has nothing to do with the statutory authority granted to cities by the legislature to construct sewer systems and compel connection to them. It was promulgated in order for the city to obtain a federal grant.

authorizes cities to contract with individuals outside city limits for the City to provide sewer services. The latter authorizes annexation of areas within an urban growth boundary when a danger to public health justifies the compelled annexation. The majority asserts that those statutes are examples of where the legislature has clearly expressed an intention to subject property owners outside city limits to city authority and in comparison, ORS 224.020 is lacking in such specificity. That assertion fails to recognize that the all of the above statutes were promulgated by the legislature to address different problems and that each contains triggering language that is applicable to discrete circumstances.

For instance, the facts in *Richards* presented a set of circumstances where the City of Portland lacked the express authority to provide water to consumers outside the city limits. ORS 225.030, enacted in 1971, now addresses that issue by authorizing municipalities to provide utilities to consumers outside city limits . In a similar vein, the annexation of an area into a city under ORS 222.855 entails consideration of other, different considerations and requires a finding of a public health danger. That statute is part of a statutory scheme about abatement of health hazards. Neither ORS 222.840 *et seq* nor ORS 225.010 *et seq* purports to be the exclusive expression of the statutory authority of a City to construct a sewer system and provide for the proper disposal of sewerage from adjacent territories. If that had been the legislature's intention, it would have not promulgated ORS 224.010 *et seq*. Clearly, the legislature has chosen to provide alternative means that authorize cities to provide sewer services outside their boundaries.

Perhaps the majority's misunderstanding of the extent of authority granted by ORS 224.020 occurs because its literal reading of the language of the statute does not engage with the concept that statutes must be given their commonsense meaning. ORS 224.020 is a statute that expressly grants authority to a City to provide for the *"proper disposal"* of sewerage from adjacent territories. (Emphasis

supplied.) "When a power is given by statute everything necessary to make it effectual is given by implication." *Fales v. Multnomah Co. et al.*, 119 Or 127, 133, 248 P 151 (1926). It belies common sense to believe that the legislature would propose to provide for the *proper disposal* of sewerage from territory adjacent to cities by the use of city sewer systems and grant cities the authority to construct a sewer system for that purpose without also granting the authority to compel *connection* to the system. When *the* purpose of the statute is to provide for the disposal of sewerage, it is necessary to effectuate that purpose through a connection with the source of the sewerage. The majority's interpretation of ORS 224.020 leaves the statute's purpose unfulfilled.[2]

The other argument made by defendant that warrants a brief discussion is the contention that her property is not in "adjacent territory" within the meaning of the statute. We held in *Bell v. City of Corvallis*, 25 Or App 821, 827, 551 P2d 125, *rev den* (1976), that the word "adjacent" in ORS 224.020 has its ordinary meaning. That is, the word implies that when two objects are not widely separated, they are "adjacent," even though they may not actually touch. The maps in the record are revealing. Defendant's property is at the southerly most part of an unincorporated area that bulges inside the City limits in a southerly direction several miles from the northerly boundary of the City. In that location, it is less than one-half mile from the edge of the City.

---

[2] The majority also asserts that if ORS 224.020 is construed to grant authority to the City to compel connection, that interpretation will effectively eviscerate the notice provisions of ORS 222.840 *et seq*. In effect, the majority is saying to the legislature by its argument that "if you don't provide express notice provisions in a particular statutory scheme, we will not enforce it" in the absence of such a challenge. The majority has created an issue not raised below and not addressed by the parties. This record does not disclose what notice defendant had that she could become subject to a requirement that she connect with the City sewer. The parties are represented by able counsel, and it is apparent from the pleadings and their briefs that they have carefully narrowed the issues on which the case is to be decided, including issues that have constitutional implications. The concern of the majority is not the concern of the parties, and we should not inject our *sua sponte* legal rationale into a situation that could unknowingly disrupt the ability of municipalities to use the express authority of the statute to lawfully construct and operate sewer systems outside their City limits. It is not unimaginable that the majority's decision will cost municipalities in this state millions of dollars in assessments and fees regarding already-constructed sewerage facilities. To the extent that the majority's interpretation of the statute is prompted by a concern about the lack of notice to defendant, the majority has thrown judicial caution to the winds.

Under the circumstances, the evidence is compelling that defendant's property meets the requirement of the statute that it be "adjacent territory," and a reasonable factfinder could not find otherwise.

For these reasons, I respectfully dissent.

Warren and Leeson, JJ., join in this dissent.