**WEYERHAEUSER COMPANY,**
a Washington corporation,
Plaintiff–Appellant,

v.

**KLAMATH COUNTY, OREGON** and
Klamath County Sheriff's Office,
Defendants–Appellees.

No. 97–35492.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1998.

Decided Aug. 6, 1998.

Arden E. Shenker, Law Offices of Arden E. Shenker, Portland, Oregon; Michael J. Gentry (on the briefs), Tooze Duden Creamer Frank & Hutchison, Portland, Oregon; Stanley C. Jones (on the briefs), Boivin Jones Uerlings DiIaconi & Oden, Klamath Falls, Oregon, for the plaintiff-appellant.

Andrew C. Brandsness, Brandsness, Brandsness & Rudd, Klamath Falls, Oregon; Reginald R. Davis (on the briefs), County Counsel, Klamath Falls, Oregon, for the defendants-appellees.

Before: GOODWIN, ALARCON, and BRUNETTI, Circuit Judges.

ALARCON, Senior Circuit Judge:

Weyerhaeuser appeals from the order granting summary judgment in favor of Klamath County and the Klamath County Sheriff's Office in Weyerhaeuser's indemnity action. We affirm because we conclude that, under Oregon law, the Klamath County Board of Commissioners and the Klamath County Sheriff's Office lacked the authority to enter into an agreement for the provision of private security services. We also conclude that a county board of commissioners cannot be bound under the doctrines of apparent authority and ratification to perform the promises contained in an agreement for such services executed by a sheriff.

· I

## PROCEDURAL AND FACTUAL BACKGROUND

On January 15, 1986, Weyerhaeuser entered into an agreement ("the 1986 agreement") with the Klamath County Board of Commissioners ("Board of Commissioners") and Sheriff Thomas H. Duryee to provide private security services on Weyerhaeuser's property located within Klamath County.[1] The parties agree that the purpose of the 1986 agreement was to provide Weyerhaeuser with enhanced security services not available to any other resident of Klamath County; Weyerhaeuser has characterized the services as "specialized law enforcement services on Weyerhaeuser's land." Weyerhaeuser's Opening Br. at 2.

In exchange for these services, Weyerhaeuser paid hourly rates, which amounted to reimbursement for the costs associated with providing the services. The 1986 agreement contained an indemnity provision obligating Klamath County and the sheriff to indemnify Weyerhaeuser against any claims, damages, or costs arising out of the performance of the 1986 agreement, except for claims solely attributable to Weyerhaeuser's conduct. It also contained a December 31, 1986 expiration date. It did not include a provision for a renewal of the agreement. The 1986 agreement was signed by Sheriff Duryee, the three county commissioners, and John D. Monfore, land use manager for Weyerhaeuser.

On January 13, 1987, after the 1986 agreement had expired, Weyerhaeuser and Sheriff Duryee executed a new agreement ("the 1987 agreement") purporting to extend the terms of the 1986 agreement for one year. The 1987 agreement contained signature lines for the members of the Board of Commissioners. Sheriff Duryee signed the 1987 agreement on behalf of the Klamath County Sheriff's Office; John Monfore signed on behalf of Weyerhaeuser. No member of the Board of Commissioners signed the 1987 agreement.

---

1. The agreement described the services to be provided as follows: "Provide Forestry Patrol and field investigation on Weyerhaeuser Company property in conjunction with the Cooperative Law Enforcement efforts with the U.S. Forest Service and B.L.M."

On January 13, 1988, Sheriff Duryee and John Monfore executed another agreement ("the 1988 agreement") purporting to extend the terms of the 1986 agreement for an additional year. The 1988 agreement did not contain signature lines for the members of the Board of Commissioners.

In March 1991, Thomas Tenold, a former Weyerhaeuser employee, filed an action ("Tenold I") in an Oregon state court against Weyerhaeuser for intentional infliction of emotional distress, defamation, and malicious prosecution. These claims related to the investigation and criminal prosecution of Tenold for the alleged theft of railroad ties from Weyerhaeuser property between May 1988 and November 1988. These dates fell within the time period set forth in the 1988 agreement. The jury awarded damages to Tenold in excess of $2,500,000. Weyerhaeuser filed a notice of appeal. The judgment was affirmed, and Weyerhaeuser filed another notice of appeal.

On July 10, 1992, Tenold filed a second action ("Tenold II") against Weyerhaeuser for intentional infliction of emotional distress, defamation, and malicious prosecution arising out of events that allegedly occurred between 1990 and October 1991.

In June 1995, Tenold and Weyerhaeuser entered into negotiations to settle Tenold I and Tenold II. Weyerhaeuser invited the Board of Commissioners and Sheriff Duryee to participate in the settlement negotiations. They declined to do so. Weyerhaeuser ultimately settled all of the claims in Tenold I and Tenold II for $1,898,495.00. Thereafter, the appeal in Tenold I was dismissed. *See Tenold v. Weyerhaeuser Co.*, 321 Or. 561, 901 P.2d 859 (1995).

On January 22, 1996, Weyerhaeuser filed this indemnity action against Klamath County and the Klamath County Sheriff's Office. Weyerhaeuser alleged that the claims in Tenold I and Tenold II resulted from the conduct of Klamath County Deputy Sheriff L.B. (Bud) Wilson in investigating the disappearance of railroad ties from Weyerhaeuser's property.

The parties filed opposing motions for summary judgment. Magistrate Judge John P. Cooney found that each of the agreements was void because Oregon law does not permit a county or a sheriff to enter into an agreement to provide security services. Judge Cooney recommended that the district court grant the motion for summary judgment filed by Klamath County and the Klamath County Sheriff's Office. The district court adopted Judge Cooney's findings and recommendations and ordered the entry of summary judgment in favor of each of the defendants.

## II

### DISCUSSION

Weyerhaeuser contends that the district court erred in holding that Klamath County and the Klamath County Sheriff's Office are not bound by the terms of the 1988 agreement. Weyerhaeuser maintains that Sheriff Duryee had the express or implied authority under Oregon law to enter into each of the private security services agreements without the written consent of the Board of Commissioners. Alternatively, Weyerhaeuser argues that Klamath County is liable under the doctrines of apparent authority or ratification. We disagree with each contention.

We review a grant of summary judgment *de novo*. *See California First Amendment Coalition v. Calderon*, 138 F.3d 1298, 1301 (9th Cir.1998). We also review *de novo* a district court's determination of state law in a diversity action. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

A. No Express or Implied Authority Exists Under Oregon law for the Sheriff to Enter into Private Security Services Agreements

The Board of Commissioners and Sheriff Duryee signed the 1986 private security services agreement. The 1986 agreement expired on December 31, 1986. None of the members of the Board of Commissioners was a party to the 1987 or the 1988 agreements. Weyerhaeuser does not contend that Klamath County is liable under the 1986 agreement or that the Board of Commissioners assented to the terms of the 1988 agreement when it was executed. To the

contrary, the undisputed evidence shows that Sheriff Duryee did not seek the approval or assent of the Board of Commissioners because, "some of the commissioners [sic] processes were somewhat laborious; we ended up in public meetings with a lot of questions. And I chose to believe that this was an extension of the original contract, and I just signed it." Sheriff Duryee Depo. at 23.

The district court concluded that "the defendants lacked the authority to enter into the contracts at issue, thereby rendering the contracts invalid." Weyerhaeuser argues that Sheriff Duryee had the "implied, and likely the express, authority" to enter into the 1988 agreement without the approval or assent of the Board of Commissioners. Weyerhaeuser's Opening Br. at 9. Accordingly, we must first determine whether Sheriff Duryee had the express or implied authority under Oregon law to enter into the 1988 agreement and to bind Klamath County to its terms.

The Oregon Constitution provides that "[a] county charter shall prescribe the organization of the county government and shall provide ... for the election ... of such officers as the county deems necessary.", Or. Const. art. VI, § 10. It also states that county officers "shall among them exercise all the powers and perform all the duties, as distributed by the county charter or by its authority, now or hereafter, by the Constitution or laws of this state, granted to or imposed upon any county officer." *Id.*

Under Oregon law, "[t]he sheriff is the chief executive officer and conservator of the peace of the county." ORS 206.010. The sheriff's express duties are described as follows:

(1) Arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses.

(2) Defend the county against those who, by riot or otherwise, endanger the public peace or safety.

*Id.* The duties spelled out in ORS 206.010 are limited to the protection of all the persons within a county. Oregon law also expressly authorizes a sheriff to enter into contracts, jointly with the governing body of the county, to provide law enforcement to other units of local government. *See* ORS 206.345.[2] Weyerhaeuser has failed to identify any Oregon statute that expressly authorizes a sheriff to enter into private security services agreements.

In addition to express authority, an Oregon agency has "such implied authority as is necessary to carry out the power expressly granted." *Warren v. Marion County*, 222 Or. 307, 320, 353 P.2d 257, 264 (1960); *cf. Colorado v. Buckallew*, 848 P.2d 904, 908 (Colo.1993) ("a sheriff also has those implied powers which are reasonably necessary to execute those express powers"). Accordingly, we must determine whether Sheriff Duryee had the implied power to enter into the private security services agreements under Oregon law. The parties have not cited a case from any jurisdiction that addresses the precise question whether a sheriff has the implied authority to enter into agreements to provide private security services. Our research disclosed a California Attorney General opinion that contains a discussion of this question under the law of that state. *See* 68 Op. Cal. Att'y Gen. 175 (1985). Consequently, the question before us is one of first impression.

Weyerhaeuser argues that Sheriff Duryee had the implied authority to enter into private security services agreements because such agreements are necessary for the sheriff to carry out the duties set forth in ORS 206.010, which require him, as the "conservator of the peace of the county," to arrest all persons who break the peace, commit crimes,

---

2. ORS 206.345 provides in relevant part as follows:

(1) A sheriff shall have authority to enter into contracts, jointly with the governing body of the county, on behalf of the county, as provided in ORS 190.010.

ORS 190.010 provides in relevant part as follows:

A unit of local government may enter into a written agreement with any other unit or units of local government for the performance of any or all functions and activities that a party to the agreement, its officers or agencies, have authority to perform.

or who endanger the public peace or safety. Weyerhaeuser relies on *Warren v. Marion County*, 222 Or. 307, 353 P.2d 257 (1960), and *Anderson v. Public Employees Retirement Bd.*, 134 Or.App. 422, 895 P.2d 1377 (1995), in support of this proposition. Neither of these cases deals with a sheriff's implied authority. Each is clearly distinguishable.

In *Warren,* the Supreme Court of Oregon held that "[t]he authority [of a county governing board] to subdelegate [the function of establishing the necessary rules or procedures for cases appealed to the board created by it] need not be expressed in the statute and may be implied if there is a reasonable basis for such implication." *Warren,* 222 Or. at 320, 353 P.2d at 264. *Warren* addresses a narrow question: an agency's right to delegate its express authority. *Warren* does not shed any light on the question whether a sheriff can enter into an agreement to provide · security services to a private entity where the sheriff's ·express duty under ORS 206.010 is to provide *equal* law enforcement protection to all persons.

The Court of Appeals of Oregon held in *Anderson* that the Public Employees Retirement Board had the implied authority to seek recovery of overpaid retirement benefits based on its express authority to manage and act as trustee for the retirement fund. *See Anderson,* 134 Or.App. at 427, 895 P.2d at 1382. The court noted that "[a] trustee has the right and duty to protect the corpus of the trust." *Id.* There was an obvious nexus in *Anderson* between the trustee's express duty to manage the fund and the implied power to institute proceedings to recover an overpayment. Here, however, providing specialized law enforcement services to Weyerhaeuser has no logical relationship to a sheriff's statutory responsibility to "[d]efend the *county* against those who, by riot or otherwise, endanger the public peace or safety." ORS 206.010 (emphasis added). We are persuaded that a sheriff lacks the express or implied authority under Oregon law to enter into an agreement to provide security services for private entities.

### B. No Apparent Authority Under These Facts

Weyerhaeuser maintains that Klamath County is liable under the 1988 agreement executed by Sheriff Duryee under the doctrines of apparent authority and equitable estoppel. In *Wiggins v. Barrett & Assoc., Inc.,* 295 Or. 679, 669 P.2d 1132 (1983), the Oregon Supreme Curt held that "there is really no practical difference between application of [the doctrines of apparent authority or equitable estoppel] to hold a principal liable for the promise of the agent." *Id.* at 689, 669 P.2d at 1140.

■ The doctrine of apparent authority permits "a principal [to] be held bound to a third person for an act of the agent completely outside the agent's implied (or express) authority if the principal has clothed the agent with apparent authority to act for the principal in that particular." *Id.* at 687, 669 P.2d at 1139 (1983). The doctrine is based on "principles of good faith and honesty and the notion that one should not be able to take advantage of the falsity of what he has led another ·to believe to be true." *Id.* at 689, 669 P.2d at 1140.

■ In assessing an apparent · authority claim, the *Wiggins* court held that a municipality may be bound by the promise of its agent acting beyond the scope of his actual authority if

(a) the municipality clothes the agent with apparent authority, (b) the promise is one which the municipality could lawfully make and perform, (c) there is no statute, charter, ordinance, administrative rule, or public record that puts the agent's act beyond his authority, (d) the person asserting the authority has no reason to know of the want of actual authority, and (e) the municipality has accepted and retained the benefit received by the municipality in return for the promise.

*Id.* at 683, 669 P.2d at 1136.

■ Weyerhaeuser has failed· to satisfy the second and fourth elements of the *Wiggins* test for apparent authority and equitable estoppel. The Board of Commissioners lacked authority under Oregon law to enter into a private security agreement. Like the sheriff, counties are creatures of statute and "their power is only coextensive with the

power thereby expressly granted, or necessarily or reasonably implied from their granted powers." *Fales v. Multnomah County,* 119 Or. 127, 133, 248 P. 151, 152 (1926).

As previously discussed, ORS 206.345 permits a sheriff to enter into agreements, jointly with the governing body of the county, to provide law enforcement to other units of local government. *See* ORS 206.345. It does not permit a county to enter into agreements with private entities for the provision of security services.

■ Weyerhaeuser also argues that Klamath County and the Klamath County Sheriff's Office conceded in their responsive brief that a county in Oregon can enter into a private security services agreement. Weyerhaeuser relies on the following argument in appellee's brief: "Making all necessary contracts is .county business. ORS 203.010.[3] The provision of law enforcement services is county business. *See,* ORS 206.345. Entering into and executing an agreement with [Weyerhaeuser] to provide extra police patrols for [Weyerhaeuser] property was county business...." Appellee's Br. at 11. Two pages later, however, the brief also states that "the promise could not be made or performed by the county as it requires the sheriff's office to enter [sic] the agreement and perform the agreement." Appellee's Br. at 13. Assuming that these contradictory and somewhat enigmatic statements amount to a concession, "we are not bound by a party's erroneous view of the law." *Flamingo Resort, Inc. v. United States,* 664 F.2d 1387, 1391 n. 5 (9th Cir.1982).

The contract with Weyerhaeuser was not an agreement for the provision of law enforcement services for the public; it was an agreement for private security services. We fail to see how entering into an agreement to provide security services to a private entity, which are not available to all residents and visitors, is a "necessary contract." [4]

The fourth *Wiggins* element was not met because Weyerhaeuser had reason to know that Sheriff Duryee lacked the authority to bind Klamath County to the 1988 agreement. John Monfore executed all three agreements on behalf of Weyerhaeuser. The original 1986 agreement was signed by Sheriff Duryee and the Board of Commissioners. While the 1987 agreement had signature lines for Sheriff Duryee and the Board of Commissioners, it was only executed by the sheriff. The 1988 agreement did not contain signature lines for the Board of Commissioners. Weyerhaeuser had strong reason to question Sheriff Duryee's authority to bind Klamath County to the 1988 agreement in view of the fact that the first contract to provide private security services was signed by the Board of Commissioners.

### C. No Ratification Under These Facts

Weyerhaeuser argues that the Board of Commissioners ratified the 1988 agreement because it had the authority to enter into private security agreements, it approved an annual budget that included revenue generated under the 1988 agreement, and it kept the payments made by Weyerhaeuser pursuant to the 1988 agreement.

Under Oregon law, an unauthorized agreement may be ratified if it was one that the Board of Commissioners could have made in the first instance. *See Steiner v. Polk County,* 40 Or. 124, 125–26, 66 P. 707, 708 (1901).

---

3. ORS 203.010 provides in relevant part as follows:

> Each county is a body politic and corporate for the following purposes:
> (1) To sue and be sued;
> (2) To purchase and hold for the use of the county lands lying within its own limits and any personal estate;
> (3) To make all necessary contracts; and
> (4) To do all other necessary acts in relation to the property and concerns of the county.

4. Prior to oral argument Weyerhaeuser filed a supplemental brief in which it asserted that *City of Eugene v. Nalven,* 152 Or.App. 720, 955 P.2d 263 (1998) supports its argument that Klamath County had the implied authority to enter into an agreement to provide private security services. A careful reading of the court's decision in *City of Eugene* quickly dispels this notion. The issue in *City of Eugene* was whether the city had the authority to act beyond its boundaries. The court held that "the power to act beyond municipal boundaries *may not be implied* and instead must be based on an express-indeed on a *'clearly expressed'*-conferral of authority." *Id.* at 725, 955 P.2d 263, 955 P.2d at 265–66 (first emphasis added).

Here, the Board of Commissioners could not ratify the 1988 agreement because it lacked the authority to enter into an agreement to provide private security services.

## III

## CONCLUSION

The district court did not err in granting summary judgment in favor of Klamath County and the Klamath County Sheriff's Office. The 1988 agreement was void because Oregon law does not expressly or impliedly authorize a sheriff to provide enhanced or private security services. Klamath County is not bound by the terms of the 1988 agreement under the doctrines of apparent authority or ratification because it also lacked the authority to enter into a contract to provide private security services.

AFFIRMED.